UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Ethel M. Kendricks,

        Plaintiff,

              **Hon. Hugh B. Scott**

              02CV853

   v.

              Decision
              &amp;
              Order[1]

Erie County Medical Center,

        Defendant.

Before the Court is the defendant's motion for summary judgment. (Docket No. 33). Also pending before the court are the plaintiff's motions to compel (Docket No. 41 and 42) and defendant's motion to quash a subpoena (Docket No. 44).

## Background

The plaintiff, Ethel M. Kendricks ("Kendricks") alleges that she was discriminated against due to her race because she was not selected for a position as the Nursing Team Leader of the I..V. Therapy Team ("NTL") at Erie County Medical Center ("ECMC"). ECMC is the only named defendant in this case.

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. §636(c).

The pertinent facts of this case do not appear to be disputed.[2] Kendricks is an African-American women employed as a nurse by ECMC since 1981. At all relevant times prior to 2001, Kendricks was assigned to the I.V. Unit. In 1991, Priscilla Ciamaga was awarded the NTL position as a result of a grievance filed by her Union. This was considered a permanent position. However, Ciamaga never performed the duties of the NTL and was out of work on sick leave for the time periods relevant to this case. From 1996, until October 2000, Diane Brown functioned as the NTL and was paid accordingly, but was never officially placed in that title inasmuch as it was occupied by Ciamaga even though she was on sick leave. (Docket No. 34 at ¶ 3). It appears that Brown would be leaving the position sometime in late 2000. On August 28, 2000 through September 3, 2000, ECMC posted an opening for a Temporary-NTL position in the I.V. Unit. (Docket No. 35 at Exhibit I).[3] The plaintiff submitted a written application for the Temporary-NTL position. (Docket No. 35 at Exhibit I, page 2). Thereafter, Kendricks met with Karen King, the Assistant Director of Nursing at ECMC, to review her application for that position. (Docket No. 35 at Exhibit J). Sometime after that King was advised that the Temporary-NTL position could not be filled because that title was encumbered by Ciamaga (who was still on sick leave).

---

[2] The Court notes that notwithstanding the Court's Order directing that the plaintiff respond to the instant motion by 10/18/05 (see Docket No. 37), the plaintiff did not file a response to the motion until 10/21/05 – the date of oral argument. The plaintiff has not provided the Court with a satisfactory explanation of why the response was not filed on a timely basis. The Court also notes that the plaintiff has not filed "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried" as required under Rule 56.1(b) of the Local Rules of Civil Procedure of the Western District of New York. Pursuant to Rule 56.1(c), all facts set forth in the statement of undisputed facts filed by the moving party (Docket No. 34) "will be deemed admitted unless controverted by the statement to be served by the opposing party." In any event, it does not appear that the operative facts are disputed in this case.

[3] The record reflects that temporary postings do not have to be posted pursuant to the applicable collective bargaining agreement ("CBA") in force in this case. The defendants assert that temporary positions are often posted even though posting is not required. (Docket No. 34 at ¶ 6).

(Docket No. 35, Exhibit O, Declaration of Karen King, September 7, 2005 at ¶ 5).  Thus, the Temporary-NTL position could not be filled.

On March 1, 2001, a posting was issued for a permanent position as Registered Nurse in the Nursing Behavioral Health Unit at ECMC.  (Docket No. 35 at Exhibit K).   Kendricks applied for this position and was awarded the position. (Docket No. 34 at ¶ 11).  This position required the plaintiff to transfer to the Behavioral Health Department. The plaintiff does not dispute that the applicable CBA in this case provides that once an employee transfers to another department, she must remain in that department for at least a year before she is eligible to transfer to a different department. (Docket No. 34 at ¶ 11).  Kendricks notified King that she wished to take the position in the Behavioral Health Unit on April 15, 2001.  (Docket No. 1 at ¶ 14).  Accordingly, effective May 20, 2001, the plaintiff was transferred from the I.V. Unit to the Behavioral Health Unit.  (Docket No. 34 at ¶ 11).

On April 2, 2001, Ciamaga was notified that because she had been on leave without pay for more than one year (as of March 22, 2001), her termination from employment was required under the CBA. (Docket No. 35, Exhibit L).  Inasmuch as the NTL position was no longer encumbered, a posting was made for a Permanent-NTL position in the I.V. Unit on April 12, 2001, three days *prior* to the plaintiff's acceptance of the position in the Behavioral Health Unit. (Docket No. 35, Exhibit M).  Kendricks acknowledges that she saw the posting for the Permanent-NTL position and that she did "nothing" in response to the posting. (Docket No. 35, Exhibit H, Deposition of Ethel Kendricks at page 38-39).   Indeed, the record reflects that Kendricks was not among those who applied for the Permanent-NTL position. (Docket No. 35, Exhibit M, page 2).  King states that she was the sole decision maker with respect to choosing among the applicants for the Permanent-NTL position.  On June 11, 2001, King selected Judith

Haynes, a Caucasian female, for the NTL position. (Docket No. 35, Exhibit P).  King stated that she did not consider Kendricks for the position because she had transferred to the Behavioral Health Unit and did not apply for the Permanent-NTL position. (Docket No. 35, Exhibit O, ¶¶ 7-9).

The plaintiff asserts that her failure to be awarded the Permanent-NTL position violated her rights under Title VII, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981 (Counts I and II).  She also asserts a purported class action claim alleging a violation of 42 U.S.C. §§1983 and 1981.[4]

## Discussion

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant  v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  To prevail on its summary judgment motion, the moving party must show that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.CIV. P. 56(c). In applying this standard, we "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir.2001).

In discrimination cases, the inquiry into whether the plaintiff's sex or race caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a "sparing" use of the summary judgment device because of juries' special

---

[4] The plaintiff has taken no steps to prosecute this case as a class action.

Case 1:02-cv-00853-HBS Document 45 Filed 11/15/05 Page 5 of 12

advantages over judges in this area. . Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir.1998); accord Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir.1998) (noting juries' possession of the "current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications").

Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must "do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See Distasio, 157 F.3d at 61. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor. See McCarthy v. New York City Technical College, 202 F.3d 161, 167 (2d Cir.2000). In this regard, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. See Anderson, 477 U.S. at 248; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Thus the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." Byrnie v. Town of Cromwell, Bd. of Educ. 243 F.3d 93, 101 (2d Cir. 2001). "The non-moving party must

come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Title VII Shifting Burdens**

Under the burden-shifting analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff first must establish a *prima facie* case of discrimination based on race. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas, 411 U.S. at 802. If she does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's dismissal. McDonnell Douglas, 411 U.S. at 802. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir.2000) citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519-524 (1993); see also McDonnell Douglas, 411 U.S. at 804; Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075 (1997). The plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).

**Statute of Limitations**

"To sustain a claim for unlawful discrimination under Title VII ... a plaintiff must file administratI.V.e charges with the [Equal Employment Opportunity Commission ('EEOC')] within 300 days of the alleged discriminatory acts." <u>Flaherty v. Metromail Corp.</u>, 235 F.3d 133, 136 n. 1 (2d Cir.2000) (citing 42 U.S.C. § 2000e-5(e)(1) and 29 U.S.C. § 626(d)(2)); <u>Lewis v. NYCTA</u>, 126 Fed.Appx. 20, 21 (2d. Cir. 2005).  The 300-day period begins on the date that a plaintiff knew or should have known of the alleged act of discrimination. <u>Harris v. City of New York</u>, 186 F.3d 243 (2d. Cir. 1999).

The plaintiff initiated her EEOC proceeding on May 14, 2002.  Thus, the plaintiff cannot assert a Title VII claim with respect to discriminatory acts of which she knew or should have known about prior to July 18, 2001.  The portion of the plaintiff's deposition testimony included in the record reflects that she claims she became aware that she did not get the NTL position (the plaintiff does not distinguish between the temporary or permanent postings) until "July of 2001." (Docket No. 38, Exhibit A, page 43).  The deposition transcript contained in the record does not provide the Court with the date in July of 2001 that the plaintiff claims to have first become aware that she did not get selected for the NTL position.  However, plaintiff's counsel's Memorandum of Law[5] in opposition to the instant motion states that the plaintiff "did not find out that the position had been awarded to another less qualified applicant until July 18, 2001." (Docket No. 38 at page 12).  This date is important, inasmuch as if the plaintiff knew or should

---

[5] Counsel's legal memoranda are not, of course, in evidentiary form and do not constitute evidence in the record.

have known that she was not going to be awarded the NTL position prior to July 18, 2001, her Title VII claim would be untimely.

The record reflects that the plaintiff knew or should have known, prior to July 18, 2001, that she would not be awarded the NTL position. It is undisputed that the plaintiff accepted a position in the Behavioral Health Unit on April 15, 2001 (Docket No. 1 at ¶ 14) –after the April 12, 2001 posting of the Permanent-NTL position. In doing so, the plaintiff knew or should have known that her acceptance of that position, which required her transfer to another department, would preclude her from obtaining any other position in the I.V. Unit for at least one year under the terms of the CBA. Thus, as of April 15, 2001, and certainly by the effective date of her transfer to the Behavioral Health Unit (May 20, 2001), the plaintiff knew or should have known that she could not be awarded the NTL position in the I.V. Unit (even if no distinction is made between the temporary and permanent NTL postings). In light of the above, the plaintiff's Title VII claim relating her failure to be awarded the NTL position is time-barred.[6]

**Prima Facie Case**

Even if the plaintiff's Title VII claims were not time barred, she has failed to establish a prima facie case in support of her discrimination claims. In order to establish a prima facie case

---

[6] The defendant also contends that the plaintiff failed to commence the instant action within 90-days of receipt of the right to sue letter issued by the EEOC. The EEOC letter is dated August 29, 2002. The defendant contends that it received the letter on August 30, 2002. The plaintiff applies the presumption that the letter was received three days after mailing (*see* Sherlock v. Montefiore Med. Ctr.*,* 84 F.3d 522, 525 (2d Cir.1996)), and contends she did not receive the EEOC letter until September 2, 2002. (Docket No. 38 at page 12). Ninety days from September 2, 2002 (not counting September 2, 2002) is December 1, 2002, which was a Sunday. The plaintiff commenced the instant action on the next business day, December 2, 2002. This is within the 90-day period.

for failure to promote, the plaintiff must allege that: 1) she "is a member of a protected class"; 2) her job performance was satisfactory; 3) ***she applied for*** and was denied promotion to a position for which she was qualified; and 4) the position "remained open and the employer continued to seek applicants." Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir.1998)(emphasis added), citing McDonnell, 411 U.S. at 802; see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000); Fisher, 114 F.3d at 1335.

There is no dispute that Kendricks has met the first element, that as a woman she is a member of a protected class. There does not appear to be any dispute that she was qualified for the NTL position. However, the plaintiff has failed to establish a *prima facie* case with respect to the remaining elements. It is undisputed that the plaintiff ***did not apply*** for the Permanent-NTL position. The plaintiff contends that prior to the posting of the Permanent-NTL position, she did not receive notice that the Temporary-NTL position would not be filled. She claims that other applicants were advised that the temporary position would not be filled. The plaintiff has failed to demonstrate how this is material to her failure to apply for the Permanent-NTL position inasmuch as she acknowledges that she was aware of the posting for the Permanent-NTL position.

The plaintiff also argues that once the NTL title was no longer encumbered by Ciamaga, the plaintiff should have simply been awarded the position or at least informed of the fact that the position was unencumbered prior to it being re-posted. (Docket No. 38 at page 7). The plaintiff provides the Court with no authority in support of this proposition. The plaintiff does not provide any basis to conclude that she should not have been required to apply for the Permanent-NTL position. The plaintiff does not suggest the existence of any barrier to her applying for the

Permanent-NTL position. Kendricks does not allege that anyone who did not apply for the Permanent-NTL position was considered for the position.

Months after applying for the Temporary-NTL position, the plaintiff did apply for another position outside of the I.V. Unit. The plaintiff acknowledges that after she had accepted her new position in the Behavioral Health Unit, but prior to her actual transfer to the new position, she saw the posting for the Permanent-NTL position. Significantly, Kendricks admits although she was aware of the posting for the Permanent-NTL position prior to it being filled and prior to the effective date of her transfer to the Behavioral Health Unit, she did "nothing," and that she did not apply for this position. The plaintiff does not contend that she took any step to suspend or withdraw her acceptance of the position in the Behavioral Health Unit, in favor of applying for the Permanent-NTL position. At oral argument, counsel for the plaintiff asserted that Kendricks "thought" that her previous application for the Temporary-NTL position was sufficient for the Permanent-NTL position. However, the plaintiff has provided no factual or legal basis to support such an argument. The plaintiff's mistaken assumption that she did not have to apply for the permanent NTL position cannot support the plaintiff's discrimination claims in this case. The plaintiff's assertion that she was confused as to whether one or two NTL positions existed also fails to establish the elements of a *prima facie* case. The plaintiff does not allege that she was told that she did not have to apply for the permanent position to be considered. The plaintiff has not demonstrated that any individual who did not apply for the Permanent-NTL position was considered for the position. The plaintiff has not articulated any basis upon which a trier of fact could reasonably conclude that she should have been considered for the Permanent-NTL position even though she did not apply for that position. Under the undisputed facts presented in this

matter, the plaintiff has failed to establish that she was subjected to an adverse employment decision made under circumstances giving rise to an inference of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802; Lambert v. Genesee Hosp., 10 F.3d 46 (2d. Cir. 1993)(Female employee in duplicating services department failed to establish Title VII claim of discrimination based on her allegation that she was denied position as informal supervisor of printing area employees because of her sex, where she never applied for position).

In light of the above, the plaintiff has failed to establish a question of fact as to whether she could establish a *prima facie* claim in this case. Therefore, the plaintiff's Title VII claims would fail even if they were timely filed.

**The §1981 Claim**

The plaintiff's complaint asserts that her failure to be awarded the NTL position also violated her rights under 42 U.S.C. §1981. "When the defendant sued for discrimination under § 1981 or § 1983 is a municipality [7] ... the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." Patterson v. County of Oneida, N.Y. 375 F.3d 206, 226 (2d. Cir. 2004) *citing* Jett v. Dallas Independent School District, 491 U.S. 701, 733-36 (1989); Monell, 436 U.S. at 692-94.

In the instant case, the plaintiff makes no attempt whatsoever to establish that the defendant's acts in this case were pursuant to any municipal policy or custom. Indeed, the

---

[7] This also applies where the defendant in an individual sued in his official capacity. Hafer v. Melo, 502 U.S. 21, 25 (1991) (claim against a municipal employee in his official capacity is deemed brought against the municipality itself).

plaintiff's papers do not respond to the defendant's arguments regarding the §1981 claim. Thus, the plaintiff's claims under §1981 set forth in Count II are dismissed.

**The Purported Class Claims**

The complaint also purports to allege a claim under §§ 1983 and 1981 on behalf of similarly situated individuals. (Docket No. 1 at ¶ 35). As noted above, the plaintiff did not pursue class certification in this case. The record contains no evidence of the existence of other individuals similarly situated to the plaintiff. Once again, the plaintiff did not respond to the defendant's arguments seeking dismissal of the class claims set forth in Count III of the complaint.

The plaintiff's purported class claims set forth in Count III are dismissed.

**Conclusion**

Based on the forgoing, the defendant's motion for summary judgment is granted and the complaint in this case is dismissed in its entirety. The plaintiff's motions to compel (Docket No. 41 and 42) are dismissed as moot. The defendant's motion to quash the subpoena served by plaintiff (Docket No. 44) is granted in light of the decision that the complaint in this case is to be dismissed.

So ordered.

                                                    s/Hon. Hugh B. Scott
                                                    United States Magistrate Judge

Buffalo, New York
November 14, 2005